**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:15-CV-14365-ROSENBERG/LYNCH**

KAHAMA VII, LLC,

   Plaintiff,

v.

KTLC RIVERBOAT, LLC;
KELLY P. KITE,
B. ANDERS NYQUIST A/K/A
BENGT ANDERS NYQUIST INDIVIDUALLY
AND AS TRUSTEE OF THE IRREVOCABLE
HARRIET NYQUIST TRUST DATED 5/9/83,
CAROLE JEAN JORDAN, TAX COLLECTOR
OF INDIAN RIVER COUNTY AND
JEFFERY R. SMITH, CLERK OF COURT OF
INDIAN RIVER COUNTY,

   Defendants.
_____/

**CASE NO.: 2:15-CV-14363-ROSENBERG/LYNCH**

KAHAMA VII, LLC,

   Plaintiff,

v.

MIAM, INC., POINTE WEST LAKEFRONT
REAL ESTATE, LLC; B. ANDERS NYQUIST,
INDIVIDUALLY AND AS TRUSTEE OF THE
IRREVOCABLE HARRIET NYQUIST TRUST
DATED 5/9/1983, CAROLE JEAN JORDAN,
TAX COLLECTOR OF INDIAN RIVER COUNTY
AND JEFFERY R. SMITH, CLERK OF COURT OF
INDIAN RIVER COUNTY,

   Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This cause is before the Court on six separate motions to dismiss: Defendant Miam's Motion to Dismiss [DE 33] in case 15-CV-14363, Defendant Smith's Motion to Dismiss [DE 37] in case 15-CV-14363, Defendant Jordan's Motion to Dismiss [DE 38] in case 15-CV-14363, Defendant KTLC Riverboat's Motion to Dismiss [DE 31] in case 15-CV-14365, Defendant Smith's Motion to Dismiss [DE 39] in case 15-CV-14365, and Defendant Jordan's Motion to Dismiss [DE 40] in case 15-CV-14365. The motions to dismiss filed by Defendant Miami, Inc. and Defendant KTLC Riverboat, LLC have been fully briefed. For the reasons set forth below, the Court finds further briefing in the remaining motions to dismiss to be unnecessary. The Court addresses the six motions to dismiss filed in two separate cases in a single order because the legal and factual issues in each case, in each complaint, and in each motion to dismiss are the same. Because Plaintiff has failed to state a claim, each motion to dismiss is granted.

This case is about three competing principles. The first such principle is that the holder of a note, secured by real property, is entitled to foreclose upon the real property to satisfy debt obligations in default. The second principle is that local governments are entitled to collect property taxes when neither owners nor lienholders pay the taxes during a long, protracted foreclosure process. The third principle is that investors who pay a delinquent owner's property taxes are entitled to have their investments protected, which in turn promotes the ability of local governments to ensure all levied revenue is collected in a timely manner. The timeline of events in this case had the unfortunate result of causing these three principles to clash because foreclosing proceedings ended at essentially the same time as property tax collection proceedings. As will be discussed, Florida law ultimately favors investors and local governments, the Defendants in this case, over a foreclosing creditor, the Plaintiff in this case.

## I.   BACKGROUND

On September 5, 2008, Plaintiff was assigned a certain note and mortgage. DE 21 ¶ 23.[1] The collateral securing the note included the real property at issue in this case. *Id.* On March 17, 2012, Plaintiff initiated foreclosure proceedings on the real property after the property owners defaulted on the note. *Id.* ¶ 24. Approximately seventeen months later, on August 28, 2013, a decree of foreclosure was entered in state court. *Id.* ¶ 26. Some fourteen months after the decree of foreclosure, October 16, 2014, Plaintiff advertised a foreclosure sale and, at that sale, Plaintiff purchased the property. *Id.* ¶ 27. Ten months after Plaintiff purchased the property at the foreclosure sale, August 28, 2015, the foreclosure sale was confirmed by court order. *Id* ¶ 28. The confirmation order was retroactive to August 1, 2015. *Id.* Plaintiff recorded the confirmation of the foreclosure sale on October 9, 2015. *Id.* ¶ 29. In summary, the total time between Plaintiff's initiation of foreclosure proceedings and Plaintiff's recording of the confirmation order measured approximately three years and seven months.

During the pendency of Plaintiff's foreclosure action, neither the owners nor lienholders of the real property paid property taxes. Real property taxes were not paid in 2008, 2009, 2010, 2011, 2012, 2013, and 2014.[2] *Id.* ¶ 30. As a result, Defendant Nyquist, who held the tax certificates issued in connection with the property owners' failure to pay any property taxes, applied for a tax deed and a certification on that application was issued on June 10, 2015. *Id.* ¶ 30. That certification contained the names and addresses of prior and current owners and lienholders of the subject real property, which included Plaintiff. *Id.* ¶ 31. The certification,

---

[1] All allegations in the complaint are accepted as true. For the sake of simplicity, these background facts are sourced from a single case, case 15-CV-14363. To the extent there are any factual differences between case 15-CV-14363 and case 15-CV-14365, the differences are noted below.

[2] Although Plaintiff's allegation on this point casts doubt on the validity of the tax certificates, there are no other factual allegations in the complaint for the Court to plausibly infer otherwise. Information on tax year 2009 is missing in case 15-CV-14365.

although it listed the names of attorneys representing owners and lienholders, did not include the name of the attorney representing Plaintiff.  *Id.* ¶ 32.  A tax sale was conducted on August 25, 2015.  *Id.* ¶ 34.  Defendant Miam and Defendant Kite purchased the real property at issue at the tax sale.  *Id.* ¶ 35.  Tax deeds were issued to Defendant Miam and Defendant KTLC on August 31, 2015 and the deeds were recorded on September 2, 2015.[3]  *Id.* ¶ 36; ¶ 35 in case 15-CV-14365.  This lawsuit soon followed.

## II.   LEGAL STANDARD

In considering a motion to dismiss, the Court must accept the allegations in a complaint as true and construe them in a light most favorable to the plaintiffs.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321 (11th Cir. 2012).  At the pleading stage, the Complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  All that is required is that there are "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

---

[3] Although Plaintiff alleges that the tax deeds "lack[ed] valid conditions precedent" and were "legally invalid, [a] nullit[y], and void ab-initio," these are legal contentions, not factual allegations.  The Court is not required to accept legal conclusions as true on a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, although Plaintiff alleges that the tax deed "lack[ed] and/or fail[ed] to identify a grantee of the Property," that allegation is belied by the text in the deeds.  Plaintiff alleges that the tax deeds were recorded at Book 2874, Page 2145 and Page 2150 in the records of Indian County, Florida.  A review of those records, which the Court may take judicial notice of as they are directly referenced in the complaint, see *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), shows grantees on the tax deeds of Miam, Inc. and KTLC Riverboat, LLC, both of which are defendants in the instant cases.  Thus, grantees were listed on the tax deeds.  The Court is therefore unable to reconcile Plaintiff's allegation that the deeds failed to identify a grantee with the actual deeds, and Plaintiff's allegation is neither plausible (as a factual matter) nor considered on Defendants' motions to dismiss—the deeds are considered instead.  *See Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940).  To the extent Plaintiff's allegations on this subject are meant to refer to its legal argument pertaining to the delayed formation of the KTLC entity, that argument is addressed *infra*.

### III. ANALYSIS AND DISCUSSION

Plaintiff has brought three counts against Defendants: a claim for quiet title, a claim for ejectment, and a claim for slander of title. Because Plaintiff's claims for ejectment and slander of title warrant little analysis, the Court devotes the majority of its attention to Plaintiff's claim for quiet title. The Court addresses the issues as follows: (A) the legal sufficiency of Plaintiff's claim for quiet title, (B) the legal status of Defendants' tax deeds, (C) Plaintiff's legal arguments against the validity of the tax deeds, (D) Plaintiff's claim for ejectment, and (E) Plaintiff's claim for slander of title. Each issue is addressed in turn.

**A. The Legal Sufficiency of Plaintiff's Claim for Quiet Title**

Quiet title actions are of common law origin, but have been codified in chapter 65 of the Florida Statutes. In order to bring a quiet title action to real property, the complaint must "allege sufficient facts to present a judiciable matter to a court of competent jurisdiction." *Woodruff v. Taylor*, 118 So. 2d 822, 822 (Fla. Dist. Ct. App. 1960). A complaint to quiet title must allege:

1. plaintiff's title to the property in controversy;
2. how plaintiff obtained title to the property;
3. the chain of title;
4. the alleged cloud or defect on title and the basis upon which defendant claims an interest in or claims the title; and
5. why defendant's claim is not well founded.

Fla. Stat. § 66.061 (2014); *Woodruff*, 118 So. 2d at 822. Since quiet title is an equitable remedy, the plaintiff must also demonstrate why there is no relief at law. Pursuant to section 65.061(3), Florida Statutes, the plaintiff must also deraign title for a period of at least seven years prior to filing suit (unless the court orders otherwise), setting forth the book and page number where the instruments are recorded. Furthermore, a plaintiff must allege specific facts with clearness, accuracy, and certainty that show (1) the asserted claim has apparent validity and (2) the

5

opposing party's title is invalid. *See Rhodes v. JPMorgan Chase Bank, N.A.*, No. 12-CV-80368, 2012 WL 5411062, at *3 (S.D. Fla. Nov. 6, 2012) (citing *Brickell v. Trammell*, 82 So. 221, 229 (Fla. 1919)). Plaintiff's claim for quiet title is legally deficient because (i) Plaintiff fails to show why Defendants' claims to the property are not well founded, (ii) Plaintiff's asserted claim has no apparent validity, and (iii) Plaintiff fails to show how the opposing party's title is invalid. Instead, for all of the reasons set forth below, Plaintiff's allegations establish that Defendants have title to the property and Plaintiff does not.

### B.  The Legal Status of Defendants' Tax Deeds

Plaintiff admits that Defendants[4] took title to the real property via a tax deed. A tax deed may only be challenged upon three limited grounds, the first of which is statutory:

> No defense to the action or attack upon the tax deed shall be made except the defense that the taxes assessed against the property had been paid by the former owner before issuance of the tax deed.

Fla. Stat. § 65.081(3). This statute is central to the Court's analysis in this case as it establishes that a tax deed may only be challenged on the basis that taxes were previously paid by the former owner. Plaintiff does not allege this; instead, the only plausible inference from Plaintiff's Complaint is that the taxes were *not* paid. A second basis for challenging a tax deed is a judicially-created exception that harmonizes two different statutes. More specifically, Florida Statute 192.522, which requires certain notice procedures before a tax deed may be issued, has been harmonized with § 65.081(3), quoted above, by permitting a challenge against a tax deed if notice procedures were not followed. *Dawson v. Saada*, 608 So. 2d 806 (Fla. 1992). Plaintiff does not allege this; instead, Plaintiff essentially alleges that statutorily-required notice

---

[4] The sake of simplicity, the Court occasionally refers to "Defendants" rather than the two individual Defendants who acquired title to the disputed properties.

6

procedures *were* followed, as more fully discussed below.  Finally, a third exception, which is also judicially-created, permits a challenge against a tax deed if any common areas of a condominium are subject to the tax deed, which is itself a harmonization of Florida Statute 717.107 with § 65.081(3).  *Doral Place Ass'n v. RU4Real, Inc.*, 22 So. 3d 627 (Fla. Dist. Ct. App. 2009).  Plaintiff does not allege this; instead, the only plausible inference from Plaintiff's Complaint is that condominium common areas have no involvement with this case whatsoever.  In summary, Plaintiff's allegations establish that Plaintiff has no basis under the law to challenge the very tax deeds it concedes have been issued and recorded.

The Court turns its attention to the ramifications of a properly issued tax deed.  Once a tax deed is issued, "Except as specifically provided in this chapter [which does not apply in the instant case], no right, interest, restriction, or other covenant shall survive the issuance of a tax deed, except that a lien of record held by a municipal or county government unit, special district, or community development district, . . . shall survive the issuance of a tax deed."  Fla. Stat. § 197.552.  Thus, whatever interest Plaintiff may have had in the subject properties prior to the issuance of the tax deed, that interest did not survive the issuance of the deed.  Thus, by Plaintiff's own admission, it has no interest in the subject property superior to that of Defendants.  As a result, Plaintiff cannot state a valid claim for quiet title.

Before addressing the bulk of Plaintiff's legal arguments, it is worth noting (and is relevant to Plaintiff's arguments) why most property interests do not survive the issuance of a tax deed.  Under the early common law in this state, every presumption was *against* the validity of a tax sale, and one claiming title under such a sale had to prove strict compliance with all applicable statutory provisions.  *Dawson*, 608 So. 2d at 808.  Because of the design of that system, tax titles were very difficult to establish, and the state was hampered in its ability to

collect taxes. *Id.* In response to that dilemma, the legislature enacted statutes that relaxed the common-law requirements of tax sales. *Id.* This trend by the legislature began in 1941. *Gilliam v. Saunders*, 200 So. 2d 588, 592 (Fla. Dist. Ct. App. 1967) (Wiggington, J., dissenting). It is therefore unsurprising that the statute quoted above that severely limits attacks on valid tax deeds, § 65.081, was enacted in 1943.

### C. Plaintiff's Legal Arguments Against the Validity of the Tax Deeds

Plaintiff raises a plethora of legal arguments in support of its claim for quiet title: (1) tax deeds may be invalidated upon a variety of grounds under Florida law, (2) the underlying factual basis for its quiet title claim is supported by Florida law, (3) § 65.081 does not limit challenges to tax deeds when that statute is compared to section § 197.206, (4) the tax deeds should be invalidated pursuant to the Florida undertaker doctrine, and (5) the tax deed issued to Defendant KTLC is invalid on its face.

1. <u>Tax Deeds May be Invalidated Upon a Variety of Grounds</u>

Plaintiff cites to a battery of Florida state court cases (and one federal bankruptcy case) for the proposition that a tax deed may be invalidated on a variety of grounds—not just the grounds elucidated above. The Florida state court cases cited by Plaintiff were decided in the years 1895, 1896, 1926, 1927, 1937, and 1941. DE 35 at 9-10. As discussed above, all of Plaintiff's cases predate a shift in Florida law that began in the year 1941 and all cases predate the statute that limits challenges to tax deeds, § 65.081. Thus, none of Plaintiff's Florida state court cases are persuasive.

Plaintiff also cites to a single federal bankruptcy case, *In re Wynwood Community Economic Development Corp., Inc.*, No. 05-15867, 2009 WL 1107636 (S.D. Bankr. Apr. 23, 2009), to demonstrate "the effect of invalidating" tax certificates. While *Wynwood* does contain

8

some discussion on the invalidation of tax certificates, it does not address in any way the impact an invalidated tax certificate may have *on an issued and recorded tax deed*. The movants in *Wynwood* sought to apply for a tax deed—a deed had not yet been issued as the landowner filed for bankruptcy the day before a tax sale was scheduled. *Id.* at *1. *Wynwood* merely notes, unremarkably, that a lien created by a tax certificate may be voided under certain circumstances. *Id.* at *4. *Wynwood* does not address § 65.081 or stand for the proposition that a tax deed may be challenged indirectly by attacking the tax certificates that ultimately resulted in the tax deed. Finally, even if *Wynwood* could be construed to contain reasoning helpful to Plaintiff, the *Wynwood* decision was later *vacated by the bankruptcy court*. *In re Wynwood*, No. 05-15867, 2010 WL 1236364 (S.D. Bankr. Feb. 12, 2010). The Court sees no reason why it should find a vacated decision is persuasive authority.

    2. <u>Plaintiff's Argument that the Underlying Basis for its Quiet Title Claim is Supported by Florida Law</u>

Plaintiff next argues that it has established valid grounds for quiet title. Putting aside that Plaintiff has failed to establish the requisite elements for a claim for quiet title as discussed above, Plaintiff cites to a decision of this Court in *Helman v. Udren Law Offices, P.C.*, No. 14-CV-60808, 2015 WL 156335 (S.D. Fla. Apr. 8, 2015). In *Helman*, this Court recited a list of grounds[5] upon which suit for quiet title may be brought. *Id.* at *3. From that list, Plaintiff argues that it is entitled to quiet title due to an improper: declaration of trust, a lien that had become barred or unenforceable, and a tax certificate. As a theoretical matter, Plaintiff may have been able to state a claim for quiet title under one of these theories had Plaintiff filed suit prior to the

---

[5] *See* 20 Fla. Jur.2d Ejectment & Related Remedies §§ 79,80 (2015)

issuance and recordation of a tax deed. Plaintiff did not do so. Plaintiff's claim for quiet title comes too late, as Defendants—not Plaintiff—possess title to the subject properties.

### 3. The Interplay of Section 65.081, Florida Statutes, with Section 197.602

Plaintiff argues that § 65.081 merely addresses defending a suit for quiet title by a tax sale purchaser. But that is precisely the matter before the Court. What § 65.081 does not address, Plaintiff argues, is the invalidation of tax certificates or a tax sale. That subject is addressed by § 197.602(1), Florida Statutes, Plaintiff argues. That statute reads as follows:

> If a party successfully challenges the validity of a tax deed in an action at law or equity, but the taxes for which the tax deed was sold were not paid before the tax deed was issued, the party shall pay to the party against whom the judgment or decree is entered … [a determined amount].

Plaintiff's position is premised on the opening phrase of this statute: "If a party successfully challenges the validity of a tax deed at law or equity." *Id.* Plaintiff's interpretation of this phrase, as the Court construes it, is that this phrase means that there *is no limit* to the grounds upon which a party may challenge a tax deed. DE 35 at 10. Such an interpretation cannot be reconciled with decisions such as *Dawson v. Saada*, 608 So. 2d 806 (Fla. 1992), in which the Florida Supreme Court deemed it necessary to carve out a special exception to the specific restrictions against challenges to tax deeds set forth in § 65.081. The Florida Supreme Court reached its decision, not based upon a broad grant of authority "at law or equity" to challenge tax deeds in § 197.602(1), but because statutory requirements pertaining to the issuance of tax deeds (such as notice of the tax sale) had to be reconciled and harmonized with the rule established in § 65.081. Finally, the gravamen of Plaintiff's contention is to place a greater emphasis on a generalized statute in lieu of a specific one—this is inapposite with well-known principles of statutory construction. *U.S. v. Louwsma*, 970 F.2d 797, 799 (11th Cir. 1992) ("It is a basic principle of

10

statutory construction that a precisely drawn statute dealing with a specific subject controls over a statute covering a more generalized spectrum."). Plaintiff's broad interpretation of § 197.602(1) is therefore rejected by this Court.

    4. <u>Plaintiff's Argument Pursuant to the Florida Undertaker Doctrine</u>

Plaintiff also presses a legal argument for its claim for quiet title by citing the Florida Rules of Professional Conduct. After citing to the rule that a notice of appearance signifies that an attorney represents a client, Plaintiff cites to the Florida undertaker doctrine. "The undertaker doctrine imposes a duty of care not only on parties to a contract, but also to any third parties that perform services under the contract." *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1285 (M.D. Fla. 2009). Plaintiff then cites to negligence law. *Union Park Memorial Chapel v. Hutt*, 670 So. 2d 64, (Fla. 1996) ("Voluntarily undertaking to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it thereby 'creates a foreseeable zone of risk.'"). After citing the Florida Rules of Professional Conduct, contract law, and negligence law, Plaintiff concludes: "Therefore, Plaintiff has stated a claim for quiet title for which relief may be granted, requiring denial of the Motion to Dismiss." DE 35 at 12.

As best as the Court can ascertain, Plaintiff's argument is that a duty pursuant to the undertaker doctrine was breached because *Plaintiff's counsel* did not receive notice of the tax sale in this case. The Court rejects this argument for several reasons. First, Plaintiff's counsel is not Plaintiff. Plaintiff received notice. DE 23 ¶¶ 31, 35 (referencing the deed which certifies notice); DE 32 at 11 (indirectly conceding Plaintiff received notice). The recorded tax deed certified that Plaintiff received notice over a month before the tax sale. Plaintiff was required to receive notice

of the tax sale pursuant to section 197.502, Florida Statutes, and Plaintiff received that notice. Second, to the extent Plaintiff's counsel was damaged by virtue of the undertaker doctrine insofar as Plaintiff's counsel caused damages to Plaintiff through inaction, such a cause of action would accrue to Plaintiff's counsel, not Plaintiff. Thirdly, even if Plaintiff has a cause of action through the undertaker doctrine in that Plaintiff somehow relied upon an assumption its counsel would receive notice of the sale (and thereby did not need to forward its own notice to counsel), and Plaintiff was damaged as a result, Plaintiff's remedy does not lie in a suit for quiet title. The elements of quiet title, quoted above, cannot be satisfied through allegations of a duty that was breached. Plaintiff was an entity entitled to receive notice of the tax sale by law. Plaintiff received that notice. The validity of a tax deed in a suit for quiet title cannot be challenged on the basis that while a lienholder (or owner) received notice, its counsel did not. Indeed, Florida courts have rejected arguments that a clerk of the court should notice counsel for an owner or lienholder, even when counsel's contact information is readily available. *See Bullock v. Houston Realty & Inv., Inc.*, 739 So. 2d 1251 (Fla. Dist. Ct. App. 1999) (rejecting the argument that plaintiff's counsel should have been notified of the tax sale when the attorney's address was apparent on a filed final judgment).

    5. The Validity of the Deed Issued to Defendant KTLC

The Court considers one final issue raised by Plaintiff. Plaintiff alleges that Defendant KTLC did not exist at the time its tax deed was recorded (with KTLC as the grantee) in case 15-CV-14365. Plaintiff alleges that KTLC was created after the tax deed was recorded, and KTLC appears to concede this is true. DE 31 at 7. A deed *by an owner* to a nonexistent entity is a nullity under Florida law. *Belcher Center LLC v. Belcher Center, Inc.*, 883 So. 2d 338, 339 (Fla. Dist. Ct. App. 2004). In cases such as *Belcher*, however, title is conventionally transferred—by

12

the consent of the owner. The Court is unaware of any authority on the question of whether a deed to a temporarily nonexistent entity by a clerk of the court in connection with a tax sale, when title passes by operation of law, is a nullity. While the legal framework that evaluates the sufficiency of an owner's deed (as a mechanism of transfer of title) is rooted in the common law, a tax deed is a creation of statute. Because the transfer of title via tax deed is rooted in statute, applying the common-law doctrine articulated in *Belcher* to this case has the potential to contravene Florida statutory law. In analyzing this problem in light of Plaintiff's complaint, the Court concludes that Plaintiff's position is unpersuasive for four reasons. First, the fact remains that *someone* purchased Plaintiff's property at a tax sale. While there may be some dispute over who acquired the property as a result of that purchase—KTLC or Defendant Kite—that dispute presents a different question pertaining more closely to clarification ("Which Defendant owns the property by virtue of the tax sale?") than the challenge Plaintiff raises here, which is to invalidate the tax sale of the property entirely.

Second, even if the tax deed did not have the effect of terminating Plaintiff's ownership interest in the real property because of the as-yet created grantee named in the deed, the fact remains that all necessary prerequisites for the issuance of the deed were fulfilled. It therefore necessarily follows that all the fees required for the issuance of the tax deed were paid to the clerk of the court. Fla. Stat. § 197.542(1). Upon such payment, a prior owner's ability to redeem tax certificates is extinguished. Fla. Stat. § 197.472(1) ("A person may redeem a tax certificate at any time after the certificate is issued and before a tax deed is issued *unless full payment for a tax deed is made to the clerk of the court.*") (emphasis added). Thus, even if the clerk of the Indian County court is required to reissue a new tax deed in connection with the previous tax sale, Plaintiff's right to redeem has already been extinguished and there can be no restoration of

property rights to Plaintiff as, at such time as a new deed were to be issued, section 197.552, Florida Statutes, would once again apply.

Third, even if KTLC was created after the tax deed was recorded, KTLC would be entitled to certain defenses if its ownership was challenged by Defendant Kite (who is alleged to have secured the winning bid at the tax sale) in any theoretical dispute, such as estoppel by deed or equitable estoppel. *Belcher Center LLC*, 883 So. 2d at 339. In effect, Plaintiff seeks to turn an academic question that appears to be a non-issue between Defendant KTLC and Defendant Kite (who is a derivative member of KTLC) and transform that question into an attack on the tax sale itself. A tax sale was conducted. All fees and costs in connection with that sale were paid. A tax deed was issued. Plaintiff essentially seeks to interpose itself between the bidder at the sale, Kite, and the entity to which Kite desired to be listed on the deed as grantee, KTLC. The instant case is not a quiet title dispute between Kite and KTLC.

Fourth and finally, for all of the reasons set forth above, a tax deed may only be challenged on very limited grounds. Plaintiff's attack premised on the grantee of the deed (and the relief Plaintiff seeks) resembles the challenges made against tax deeds prior to 1941 which required, in order for title to transfer to a tax investor, strict compliance with all applicable requirements. But tax deeds are insulated from a wide variety of attacks and challenges under Florida law, and the Florida legislature has created exceptions to the general principle that a deed with a non-existent entity-grantee is a nullity. *See* Fla. Stat. § 692.101 (permitting transfers of title to unincorporated churches). Tax collection proceedings have run their course. The delinquent taxes, which Plaintiff became responsible for at such time as it became an owner via foreclosure, were paid by another party to the tax collector. The Defendants who paid the property taxes encumbering Plaintiff's former property are afforded protection under the current

state of Florida law. The Court therefore concludes that to the extent there is any confusion over the grantee on one of the tax deeds in this case, it is for the grantee, Defendant Kite, or subsequent purchasers—not Plaintiff—to seek clarification on that matter.

In summary, the Court cannot discern from the operative complaint why Plaintiff permitted property taxes to remain unpaid for many years during a long and protracted foreclosure process, nor can the Court discern why Plaintiff did not pay off the tax certificates that had the potential to threaten the culmination of its foreclosure lawsuit. Both the property taxes and the tax certificates encumbering Plaintiff's property were a matter of public record and, if the tax certificates were invalid as Plaintiff now alleges, it is unknown why Plaintiff did not challenge the certificates during the foreclosure process. The Court cannot discern why Plaintiff delayed in confirming its purchase of the real property in this case nor can the Court discern why Plaintiff, upon receiving notice of the tax sale, did not forward that information to its counsel. In any event, Plaintiff's allegations preclude Plaintiff from a claim for quiet title as a matter of law. To the extent Plaintiff's arguments could be construed to request that this Court create a new judicial exception for challenges to tax deeds under Florida law, the Court declines to do so. Although Plaintiff argues that denying it quiet title is equivalent to permitting Defendants to engage in (alleged) illegal activities, the same could be said of any time-based requirement in the law, such as a statute of limitations. The time to challenge a tax certificate, which may give rise to a tax deed sale, is before the tax deed issues, not after. Fla. Stat. § 65.081.

Plaintiff's operative complaint is its third complaint in this action. The amended pleadings deadline in this case has passed. In light of Plaintiff's ample opportunity for amendment (which Plaintiff has utilized), the passage of the amended pleadings deadline in this case, the content of Plaintiff's allegations, and the tax deeds in the public record, the Court

15

concludes that further amendment is futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Plaintiff's quiet title claim is therefore dismissed with prejudice.[6]

### D. Plaintiff's Claim for Ejectment

Plaintiff's claim for ejectment is premised upon its claim for quiet title. The Court has already concluded that Plaintiff's claim for quiet title is deficient and, moreover, the grantee of a tax deed is entitled to immediate possession of the property secured by the tax deed. Fla. Stat. § 197.562. Plaintiff's claim for ejectment is dismissed with prejudice for the same reasons as Plaintiff's claim for quiet title.

### E. Plaintiff's Claim for Slander of Title

With respect to Plaintiff's claim for slander of title, while Plaintiff argues that it has pleaded all necessary elements, Plaintiff has intertwined and premised this claim upon its quiet title claim. For example, Plaintiff's slander of title claim alleges: "These false publications of Nyquist, Miam and Pointe materially, substantially and foreseeably slandered and clouded Plaintiff's title to the Property, proximately damaging Plaintiff, *which must incur fees and costs to clear its title*." DE 21 ¶ 65. Plaintiff has no title to clear and thus cannot incur damages in connection with clearing title for all of the reasons set forth above.

To the extent Plaintiff seeks to establish a claim for slander of title for the period of time before Plaintiff lost its ownership of the subject properties, Plaintiff's slander of title claim is still deficient. An action for slander of title is cognizable when "the malicious publication of a falsehood concerning title . . . impairs the vendibility of the property." *Miceli v. Gilmac Devs., Inc.*, 467 So. 2d 404, 406 (Fla. Dist. Ct. App. 1985). The impaired vendibility of a property, however, must cause "actual damage." *Residential Cmtys. of Am. v. Escondido Cmty. Ass'n*, 645 So. 2d 149, 150 (Fla.

---

[6] Because the Court's inquiry need go no further than the tax deed, the Court does not address any of Plaintiff's arguments pertaining to chain of title subsequent to the tax deed.

Dist. Ct. App. 1994).[7]  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  The allegations in Plaintiff's operative complaint and the resulting timeline cannot plausibly state a claim for actual damages that impaired "actual vendibility."

Plaintiff alleges that the confirmation of its foreclosure sale was entered on August 28, 2015 and recorded on October 9, 2015.  DE 21 ¶¶ 28,29.  By contrast, the tax sale in this case which transferred ownership to Defendants was held on August 25, 2015, was finalized on August 31, 2015, and was recorded on September 2, 2015.  While the order confirming Plaintiff's foreclosure is alleged to have been retroactive to the date of August 1, 2015, the fact remains that virtually all of the time Plaintiff owned the subject properties was theoretical or constructive.  Even Plaintiff's counsel was unaware of any alleged impairment to title until it was too late.  By the time Plaintiff recorded evidence to the world of its ownership of the subject properties, Plaintiff had already been divested of its ownership.  Thus, not only can Plaintiff not plausibly allege any impairment to vendibility that caused it damages, Plaintiff cannot plausibly allege actual damages at all.  Plaintiff lost its title immediately after acquiring it.  In summary, Plaintiff's slander of title claim fails as a matter of law because it is premised on Plaintiff's quiet title claim and because Plaintiff cannot plausibly allege damages.  Plaintiff's slander of title claim is therefore dismissed, and this dismissal is with prejudice for all of the same reasons Plaintiff's quiet title claim is dismissed with prejudice.

---

[7] Although legal fees have been held to be a sufficient basis for damages (in the absence of other damages), such legal fees are cognizable when they are incurred in connection with the quieting of title—a condition which does not apply in this case for the reasons set forth above. *Atkinson v. Fundaro*, 400 So. 2d 1324 (Fla. Dist. Ct. App. 1981).

## IV. CONCLUSION

For all of the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant Miam's Motion to Dismiss [DE 33] in case 15-CV-14363, Defendant Smith's Motion to Dismiss [DE 37] in case 15-CV-14363, Defendant Jordan's Motion to Dismiss [DE 38] in case 15-CV-14363, Defendant KTLC Riverboat's Motion to Dismiss [DE 31] in case 15-CV-14365, Defendant Smith's Motion to Dismiss [DE 39] in case 15-CV-14365, and Defendant Jordan's Motion to Dismiss [DE 40] in case 15-CV-14365 are all **GRANTED** with respect to the grounds and reasoning discussed in this Order. Plaintiff's quiet title claim (Count I), ejectment claim (Count II), and slander of title claim (Count III) are all **DISMISSED WITH PREJUDICE**. The Clerk of the Court is ordered to **CLOSE** case 15-CV-14363 and case 15-CV-14365.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 6th day of April, 2016.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record